O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MICHAEL MCINTEER,<br><br>             Plaintiff,<br><br>        v.<br><br>ASHLEY DISTRIBUTION<br>SERVICES, LTD.; ASHLEY<br>FURNITURE INDUSTRIES,<br>INC.,<br><br>             Defendants. | Case No.<br>EDCV 13-0268 JGB (DTBx)<br><br>ORDER GRANTING IN PART<br>AND DENYING IN PART<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT |

    Before the Court is Defendants' motion for summary judgment or alternatively, partial summary judgment. ("Motion," Doc. No. 19.)  After considering the papers filed in support of and in opposition to the Motion, and the arguments presented at the June 23, 2014

1

hearing, the Court GRANTS IN PART and DENIES IN PART the Motion.

## I.   BACKGROUND

On November 26, 2012, Plaintiff Michael McInteer ("Plaintiff") filed a Complaint in state court against Defendants Ashley Distribution Services, Ltd. and Ashley Furniture Industries, Inc. (collectively, "Defendants" or "Ashley"). ("Compl.," Not. of Removal, Exh. B, Doc. No. 1.)  The Complaint states twelve claims for relief for: (1) wrongful termination in violation of Cal. Gov't Code § 12941; (2) wrongful termination in violation of Cal. Gov't Code § 12940(a); (3) violation of Cal. Lab. Code § 132(a); (4) failure to pay overtime wages; (5) waiting time penalties pursuant to Cal. Lab. Code § 558; (6) penalties pursuant to Cal. Lab. Code § 558; (7) interest on unpaid overtime, attorney's fees and costs pursuant to Cal. Lab. Code §§ 218.5, 218.6, and 1194; (8) violation of Cal. Bus. & Prof. Code § 17200; (9) violation of Cal. Lab. Code §§ 226, 226.3; (10) defamation; (11) intentional infliction of emotional distress; and (12) injunctive relief.[1]  (Compl.)  The claims pertain to

_____

[1]  In his opposition to summary judgment, Plaintiff voluntarily dismisses his third and tenth causes of action for violation of Cal. Lab. Code § 132(a) and defamation.  (Doc. No. 23 at 5.)  Accordingly, the
(continued . . .)

1   Defendants' termination of Plaintiff's employment as a

2   Transportation Care Manager on December 23, 2011.

3   Defendants removed the action to this Court on February

4   11, 2013.  (Not. of Removal.)

5        On May 5, 2014, Defendants filed a motion for

6   summary judgment.  ("Motion," Doc. No. 19.)  In support

7   of the Motion, Defendants attached:

8        • Memorandum of Points and Authorities (Motion);

9        • Statement of Undisputed Facts ("SUF," Doc. No.

10          19-2);

11       • Declaration of Tom Qualman ("Qualman Decl.,"

12          Doc. No. 19-3, Tab 1), attaching Exhibits A

13          through D;[2]

14       • Declaration of Nancy Evanson ("Evanson Decl.,"

15          Doc. No. 19-3, Tab 2), attaching Exhibits E

16          through K;

17       • Declaration of Manual Martinez ("Martinez

18          Decl.," Doc. No. 19-3, Tab 3);

19       • Declaration of Blaire H. Baily ("Baily Decl.,"

20          Doc. No. 19-3, Tab 4), attaching exhibits L

21          through N;

22

23

24   ( . . . continued)
     Court DISMISSES Plaintiff's third and tenth claims for
25   relief.
        [2] Due to the volume of evidence filed in support of
26   and in opposition to the Motion, the Court does not
     enumerate each attached Exhibit, but describes the
27   documents in subsequent evidentiary citations as
     needed.

- Declaration of John Leighty ("Leighty Decl.," Doc. No. 19-3, Tab 5), attaching Exhibit O; and
- Request for Judicial Notice ("RJN," Doc. No. 20) attaching Exhibit N.

Plaintiff's opposition was due on May 12, 2014. See L.R. 7-9. On May 30, 2014, three days before the hearing on the Motion, Plaintiff filed a motion for extension of time to file his opposition (Doc. No. 21), which Defendants opposed (Doc. No. 22). The Court held a hearing on the request for extension and granted Plaintiff's motion. (Doc. Nos. 27, 31.) The Court reset the hearing on summary judgment for June 23, 2014. (Doc. No. 27.)

Plaintiff filed his late opposition on June 2, 2014. ("Opp'n," Doc. No. 23.) In support thereof, Plaintiff attached:

- Statement of Genuine Disputes of Material Fact ("SGI," Doc. No. 23-4);
- Objections to Evidence ("Obj.," Doc. No. 23-2);
- Declaration of Michael McInteer ("McInteer Decl.," Doc. No. 23-3, Tab 1), attaching Exhibit A; and
- Declaration of Sarah Nowels ("Nowels Decl.," Doc. No. 23-3, Tab 2), attaching as Exhibit B excerpts of the deposition of Michael McInteer.

On June 9, 2014, Defendants replied ("Reply," Doc. No. 28) and attached:

4

- Response to Plaintiff's SGI ("Resp.," Doc. No. 29);
- Response to Plaintiff's Objections to Evidence ("Resp. Obj.," Doc. No. 30); and
- Declaration of Heidi Larson Howell ("Howell Decl.," Doc. No. 28-1) attaching Exhibit A.

## I.   LEGAL STANDARD[3]

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323. This burden may be satisfied by either (1) presenting evidence to negate an essential element of the non-moving party's case; or (2) showing that the non-moving

_____

[3] Unless otherwise noted, all references to "Rule" refer to the Federal Rules of Civil Procedure.

party has failed to sufficiently establish an essential element to the non-moving party's case.  Id. at 322-23. Where the party moving for summary judgment does not bear the burden of proof at trial, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case."  Id. at 325.

However, where the moving party bears the burden of proof at trial, the moving party must present compelling evidence in order to obtain summary judgment in its favor.  United States v. One Residential Property at 8110 E. Mohave, 229 F. Supp. 2d 1046, 1047 (S.D. Cal. 2002) (citing Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35 (1st Cir. 1998) ("The party who has the burden of proof on a dispositive issue cannot attain summary judgment unless the evidence that he provides on that issue is conclusive.")).  Failure to meet this burden results in denial of the motion and the Court need not consider the non-moving party's evidence.  One Residential Property at 8110 E. Mohave, 229 F. Supp. 2d at 1048.

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 256.  The non-moving party does not meet this burden by showing "some metaphysical doubt as to the

material facts." <u>Matsushita Elec. Indus. Co., Ltd. v.</u>
<u>Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Genuine
factual issues must exist that "can be resolved only by
a finder of fact because they may reasonably be
resolved in favor of either party." <u>Anderson</u>, 477 U.S.
at 250.  When ruling on a summary judgment motion, the
Court must examine all the evidence in the light most
favorable to the non-moving party. <u>Celotex</u>, 477 U.S.
at 325.  The Court cannot engage in credibility
determinations, weighing of evidence, or drawing of
legitimate inferences from the facts; these functions
are for the jury. <u>Anderson</u>, 477 U.S. at 255.

## II.  FACTS

**A.  Evidentiary Objections**

     Plaintiff filed evidentiary objections to the
evidence Defendants submitted in support of their
Motion.  (Obj.)  Over half of the objections are aimed
at Defendants' purported misstatements of the evidence
as represented in their SUF.  (<u>See</u> Obj. ¶¶ 10-12, 16,
27, 30-31, 34, 36, 59-60, 72-73, 87-89.)  "Plaintiff's
'evidentiary objections' to Defendants' separate
statements of undisputed facts are not considered
because such objections should be directed at the
evidence supporting those statements." <u>Hanger</u>

1  <u>Prosthetics & Orthotics, Inc. v. Capstone Orthopedic,</u>
2  <u>Inc.</u>, 556 F. Supp. 2d 1122, 1126 (E.D. Cal. 2008);
3  <u>Contract Associates Office Interiors, Inc. v. Ruiter</u>,
4  No. CIV 07-0334 WBS PAN, 2008 WL 2916383, at *5 (E.D.
5  Cal. July 28, 2008) ("[T]he court will not consider
6  Contract Associates' objections to SSUF Nos. 60, 64,
7  and 75 because these objections are aimed only at
8  Ruiter's characterization and purported misstatement of
9  the evidence-as represented in her SSUF-rather than the
10  actual underlying evidence."). In ruling on summary
11  judgment, the Court considers the evidence submitted in
12  support of and opposition to the Motion, it does not
13  rely on the parties' characterization of the evidence.
14  <u>See</u> <u>Dalton v. Straumann Co. USA Inc.</u>, No. C-99-4579
15  VRW, 2001 WL 590038, at *4 (N.D. Cal. May 18, 2001)
16  ("Statements of undisputed facts, as in this case, are
17  generally unhelpful. It is on the underlying
18  declarations, depositions and exhibits that the court
19  will rely."). The Court therefore does not consider
20  Plaintiff's "misstates testimony" or "misstates the
21  document" objections.
22      All but three of the remaining objections are
23  directed at the coworker complaints Defendants received
24  regarding Plaintiff's conduct. (<u>See</u> Obj. ¶¶ 41-42, 46,
25  51-58.) Plaintiff objects on hearsay and foundation
26  grounds to all evidence of employee complaints. (<u>Id.</u>)
27  The Court OVERRULES the hearsay objections as the

1  employees' statements are not offered to establish the
2  truth of the matter asserted.   "[W]hether [Plaintiff]
3  actually committed the acts alleged in the
4  investigations or whether the witnesses' statements
5  were true is irrelevant to the issues in this case, and
6  the [complaints] are not considered for those
7  purposes." See Montoya v. Orange Cnty. Sheriff's Dep't,
8  ___ F. Supp. 2d ___, 2013 WL 6662707, at *5 (C.D. Cal.
9  Aug. 13, 2013).   Instead, Defendants offer the employee
10 statements to show they were aware of the complaints
11 against Plaintiff and that those complaints motivated
12 his termination.   See Calmat Co. v. U.S. Dep't of
13 Labor, 364 F.3d 1117, 1124 (9th Cir. 2004) ("[T]he
14 testimony was not admitted to prove the truth of
15 Sengle's out-of-court statement to supervisors, but as
16 evidence that CalMat supervisors were aware that Lewis
17 threatened him and made racially-offensive comments.");
18 Means v. City & Cnty. of San Francisco, Dep't of Pub.
19 Health, 749 F. Supp. 2d 998, 1006 (N.D. Cal. 2010)
20 (allowing evidence of statements made in an employer's
21 investigation into employee's inappropriate conduct to
22 show that the employer had a non-discriminatory motive
23 for taking disciplinary action).   Plaintiff also
24 objects to this evidence on foundation grounds, but the
25 employees have personal knowledge of their own
26 experiences and the management personnel properly laid
27 the foundation for their knowledge of the employee

complaints.  Therefore, Plaintiff's foundation objections are also OVERRULED.

Regarding Plaintiff's final three objections, Plaintiff clearly has knowledge of his own actions and statements, thus Objection 61 is OVERRULED.  The second and third objections concern Plaintiff's admission that he was speculating on the bases for his termination. (Obj. ¶¶ 87-88.)  The Court SUSTAINS Plaintiff's objection to these statements.  The basis for Plaintiff's termination is, in part, the subject of the motion for summary judgment and Plaintiff's speculation on the grounds for his termination is a legal conclusion to be decided by the Court.  See Melendez v. Morrow Cnty. Sch. Dist., No. CIV. 07-875-AC, 2009 WL 4015426, at *16 (D. Or. Nov. 19, 2009).

**B.  Disputed and Undisputed Facts**

Unless specifically noted, the following material facts are sufficiently supported by admissible evidence and are uncontroverted; they are "admitted to exist without controversy" for purposes of the Motion.  L.R. 56-3.  All disputed facts are explicitly designated as such.

Ashley has a furniture warehouse in Colton, California which ships and distributes furniture pieces.  (SUF ¶ 1; SGI ¶ 1.)  The Colton warehouse is a

large transportation hub which handles national and
international freight in its six shipping yards.  (SUF
¶¶ 2-5; SGI ¶¶ 2-5.)   The Transportation Care Manager
oversees the operations activity and coordinates
personnel in the Colton facility, including overseeing
the inbound and outbound freight and the internal
movement of trailers, shipping containers, and
employees.  (SUF ¶ 6; SGI ¶ 6; Martinez Decl. ¶ 5.)

Over the course of several days in August 2011,
several Ashley employees, including Director of Human
Resources Tom Qualman ("Qualman"), Vice President of
Transportation Joel Fasnacht ("Fasnacht"), and Vice
President of Transportation and Distribution Centers
John Leighty ("Leighty"), interviewed Plaintiff for the
position of Transportation Care Manager.  (SUF ¶ 9; SGI
¶ 9.)   Shortly thereafter, Defendants hired Plaintiff
to replace the current Transportation Care Manager, Bob
Sheehan ("Sheehan"), and Plaintiff began working in the
Colton facility on August 15, 2011 for an annual salary
of $72,500.  (SUF ¶¶ 8, 39; SGI ¶¶ 8, 39; Deposition of
Michael McInteer ("McInteer Depo.") 36:7-19, Baily
Decl., Exh. L, Nowels Decl., Exh. B.)   When Plaintiff
joined Ashley, Sheehan was still employed as
Transportation Care Manager, but it was planned that
Sheehan would leave the company and Plaintiff would be
the sole Transportation Care Manager.  (McInteer Depo.
40:23-41:9.)   Until Sheehan left, Plaintiff was given

the alternate job title – Human Resources and
Operations Support.  (McInteer Depo. 38:14-21; Martinez
Decl. ¶ 6.)

### 1.  Job Duties

Once Plaintiff was hired, Ashley expected him to
perform the Transportation Care Manager duties at the
Colton facility including: recruiting and hiring
drivers;[4] coaching, counseling, and disciplining current
drivers;[5] supporting and supervising office personnel;
communicating and negotiating with outside vendors;
ensuring compliance with regulations and training
subordinates on the regulations; observing, evaluating,
and analyzing transportation operations and personnel
in the facility and providing recommendations to
improve efficiencies; and recommending and implementing
improvements and/or modifications of processes,
methods, and resource utilization to support the driver
and delivery process.  (Martinez Decl. ¶¶ 7, 12.)
Ashley expected that after Sheehan left, Plaintiff
would have a full grasp of the personnel and operations
at the Colton facility in order to provide
recommendations for and implement changes in procedures

---

[4] Plaintiff disputes that he had the authority to
hire or fire other employees or was asked for
suggestions regarding hiring and firing.  (McInteer
Decl. ¶ 8.)
[5] Plaintiff disputes that he had the authority to
recommend a change in employment status for any
employee.  (McInteer Decl. ¶ 8.)

1  to increase efficiencies, reduce accidents, and improve
2  overall results.  (Id. ¶ 11.)
3      Plaintiff testified that he was in training during
4  his entire three month employment with Ashley.
5  (McInteer Depo. 45:6-21.)  He was told to "observe the
6  operation, observe the personnel, make my evaluations,
7  learn the basics of the billing, [and] some of the
8  fundamentals of the clerks."  (Id. 38:22-25.)  As part
9  of his training, Plaintiff worked with the clerks to
10 learn the billing procedures, including preparing bills
11 of lading and shipment manifests.  (Id. 42:11-24.)
12 Initially, the percentage of time devoted to billing
13 was 35 to 45 percent, but it dropped down to 20 to 25
14 percent as he became more knowledgeable.  (Id. 42:25-
15 44:1.)  Plaintiff spent about 50 percent of his time
16 observing and being instructed on the operations of the
17 warehouse, learning how to operate the trucks,
18 understanding manpower planning, working with the lead
19 yard man, checking on drivers and equipment, and
20 training in the warehouse and with the dock men.  (Id.
21 44:2-45:25.)  In order to understand the overall
22 operation, Plaintiff worked with the equipment in the
23 warehouse, loaded and unloaded trucks, moved drivers,
24 and met customers.  (Id. 46:1-24.)  He also came in on
25 Saturdays to observe the operation and "get a handle on
26 . . . how things performed on the weekend."  (Id.
27 50:24-51:16.)  The purpose of all of his training was

1  to enable him to learn as much as he could about the
2  operation in order to analyze the operations, make
3  suggestions for improvements, and improve the work
4  force and operations.  (Id. 44:11-45:5.)[6]

5      After the first three to four weeks, Plaintiff
6  spent about 40 to 50 percent of his work hours "filling
7  in the time" and "looking to stay busy."  (Id. 55:13-
8  56:11.)  This included talking with employees and
9  drivers and learning their duties.  (Id. 56:11-13.)

10     Plaintiff "set his own schedule," and had
11 discretion to determine how to accomplish his
12 objectives.  (McInteer Depo. 47:16-48:14.)  He checked
13 in with his supervisor "quite often" to get his input
14 on what to focus on or a particular direction for his
15 training.[7]  (Id.)  Defendants provide no evidence of the

16 _____
   [6] In his declaration, Plaintiff states that he "did
17 not exercise discretion and independent judgment a
   majority of the time."  (McInteer Decl. ¶ 9.)
18 Martinez' declaration, submitted by Ashley, states the
   opposite.  (Martinez Decl. ¶ 11.)  These statements
19 constitute legal conclusions and thus are not
   considered by the Court.  See In re Farmers Ins. Exch.,
20 Claims Representatives' Overtime Pay Litig., 481 F.3d
   1119, 1131 (9th Cir. 2007) ("[W]e disagree with the
21 district court's legal conclusion . . . that an
   automobile damage adjuster's primary duties [do not]
22 require . . . the use of discretion and independent
   judgment.").  Similarly, Plaintiff usurps the role of
23 the Court when he concludes that he was not involved in
   the management of Ashley.  (McInteer Decl. ¶ 6.)  See
24 29 C.F.R. 541.2(a).
   [7] There is a dispute as to the identity of
25 Plaintiff's supervisor.  It is undisputed that until he
   left the company, Fasnacht was Plaintiff's supervisor.
26 (SUF ¶ 37; SGI ¶ 37.)  After Fasnacht left in November
   2011, there is a dispute as to whether Plaintiff
27 reported to Leighty or Manny Martinez.  (Compare
   Leighty Decl. ¶ 4 with McInteer Depo. 170:7-10.)

instruction or direction Plaintiff received from his
supervisor.

### 2.   Age

During the entirety of his employment with Ashley,
Plaintiff was 62 years old.  (SUF ¶ 83; SGI ¶ 83.)  The
individual hired to replace Plaintiff was 56 years old.[8]
(Evanson Decl. ¶ 17.)

Plaintiff testified that Leighty asked him his age
during one conversation between them on November 15 or
16, 2011.  (SUF ¶ 89; SGI ¶ 89.)  During this meeting,
Leighty mentioned that he would understand if Plaintiff
wanted to look for other work.  (McInteer Depo. 170:15-
19.)  Leighty does not recall asking Plaintiff his age.
(Leighty Decl. ¶ 5.)

### 3.   Employee Complaints

On Plaintiff's first or second day at Colton, a
coworker, Margarita Gomez ("Gomez") complained to Human
Resources that Plaintiff twice told her that he "wanted

_____

[8] Plaintiff attempts to dispute this fact by
contending that Defendants failed to identify
Plaintiff's replacement or his job duties.  (SGI ¶ 84.)
A lack of evidence does not create a disputed issue of
fact.  See Malfatti v. Mortgage Elec. Registrations
Sys., Inc., No. C 11-03142 LB, 2013 WL 3157868, at *9
(N.D. Cal. June 20, 2013) ("But these purported
insufficiencies do not constitute a dispute of material
fact that actually supports Malfatti's affirmative
case. Essentially, Malfatti asks the court to infer
evidence of liability based on purported weaknesses in
the evidentiary record. While the court resolves
reasonable inferences in Malfatti's favor, his failure
to obtain discovery does not mean he can withstand
summary judgment.").  The fact remains undisputed for
purposes of summary judgment.

1   to get to know her on a personal level." (SUF ¶¶ 40-
2   41; SGI ¶¶ 40-41.) She reported these comments were
3   "threatening," "alarming," and "embarrassing."
4   (Qualman Decl., Exh. B.)
5        The Human Resources manager held a meeting on
6   August 17, 2011 with Plaintiff and Gomez regarding the
7   complaint. (SUF ¶ 43; SGI P 43.) Plaintiff explained
8   the intent of his conversation and apologized for the
9   miscommunication. (SUF ¶ 44; SGI ¶ 44.)
10       Between August 15, 2011 and November 22, 2011,
11  Ashley received several verbal complaints about
12  Plaintiff from his coworkers. (SUF ¶ 45; SGI ¶ 45.)
13  On November 22, 2011, Leighty learned that Tim Pavloff
14  ("Pavloff"), a Colton employee, complained that
15  Plaintiff invited him to share a single person
16  restroom. (SUF ¶ 46; SGI ¶ 46.) Leighty instructed
17  Qualman to address the complaint immediately and to
18  conduct an investigation. (Leighty Decl. ¶ 6.) That
19  day, Qualman and other Ashley personnel interviewed
20  several employees, including Pavloff, Gomez, Phirath
21  Hou, Sheehan, Charles Fairhurst, and Richard Sandoval.
22  (Qualman Decl. ¶ 7.) During Gomez' interview, she made
23  additional complaints including that Plaintiff was
24  aggressive, followed her around the office all day
25  including to the restroom, rubbed up against her when
26  she was at the copy machine, made an offensive comment
27  about women being subservient to men, and made her feel

16

uncomfortable.   (Qualman Decl., Exhs. A, B.)   During
Sheehan's interview, he complained that Plaintiff
initiated two unwelcome conversations about penis size.
(<u>Id.</u>)   Pavloff once again stated that in October 2011
Plaintiff invited him to share a single person
restroom.   (<u>Id.</u>)   Pavloff declined the invitation,
which he found offensive and immediately reported it to
Sheehan.   (<u>Id.</u>)

On November 23, 2011, Human Resources personnel
interviewed Plaintiff and gave him an opportunity to
respond to the complaints.   (SUF ¶ 49; SGI ¶ 49.)
Plaintiff denied or could not recall the events
described in the complaints.   (Qualman Decl., Exh. C.)
Ashley asked Plaintiff to provide a written statement,
but he said he felt too sick to do so and left work.
(SUF ¶ 61; SGI ¶ 61.)   Qualman presented the findings
from his investigation into the complaints to Leighty.
(SUF ¶ 78; SGI ¶ 78.)

After the meeting on November 23, 2011, Plaintiff
never returned to work.   (SUF ¶ 63; SGI ¶ 63.)

**4.   Absences**

Ashley's attendance policy includes a provision
addressing "excessive absences," which states that
"[t]he Company may deem an employee's absences within a
365-day period as excessive whether excused or
unexcused" and "reserves the right to administer
corrective action up to and including termination to

the employee to address their excessive absenteeism."
("Policy," Evanson Decl., Exh. F.)  In a separate
provision, the Policy includes a progressive discipline
procedure, including several written warnings for up to
four unexcused absences within one year; the fifth
absence incurs the possibility of termination.  (Id.)
The Policy defines an excused absence as one in which
the "employee has submitted acceptable medical
documentation substantiating that he/she is incapable
of working for the time of absence."  (Id.)[9]

On November 25, 2011, Plaintiff faxed a doctor's
note to Ashley excusing him from work from November 23
through December 2, 2011.  (SUF ¶ 68; SGI ¶ 68.)  On
December 5, 2013, Plaintiff faxed two notes excusing
him from work from December 2 to 5 and December 5 to 8
for "major depression, single episode moderate."  (SUF
¶¶ 69-70; SGI ¶¶ 69-70.)  There is a dispute as to

_____

[9] The Policy also states that an employee who has
not received prior authorization to be absent "is
obligated to notify the Company in writing or by phone
prior to the commencement of the work shift of any
absence and the reason for the absence."  (Evanson
Decl., Exh. F.)  "Failure to give [prior] notice may
result in disciplinary action up to and including
termination of employment."  (Id.)  In another section
entitled "extended absences," the Policy states that
being absent for three or more days without notifying
Ashley in advance may subject the employee to
termination.  (Id.)  At the hearing, Defendants made
clear that they are not relying on these provisions of
the Policy to support their termination decision.
Thus, the Court does not rely on Plaintiff's violations
of these provisions in its analysis of Defendants'
legitimate non-discriminatory reasons for Plaintiff's
discharge.

whether Ashley received a doctor's note for the period
from December 9 to 15, 2011.  Ashley contends Plaintiff
did not provide any notification regarding his absences
during this period.  (Evanson Decl. ¶ 12.)  Plaintiff,
on the other hand, recalls faxing every work order,
including the one covering this period.  (McInteer
Decl. ¶¶ 13-14, Exh. A.)  There is no dispute that on
December 16, 2011, Plaintiff faxed Ashley a work status
report taking him off work from December 19 through 21.
(Evanson Decl., Exh. J.)  This report also noted that
Plaintiff was "off work per Psychiatry . . . from
11/23/11 until 12/19/11."  (Id.)  Plaintiff did not
report to work on December 22, 2011, nor did he notify
Ashley in advance of his absence.  (SUF ¶ 75; SGI ¶
75.)  The following day, Plaintiff sent Ashley a
doctor's note taking him off work from December 22,
2011 to January 2, 2012.  (SUF ¶ 76; SGI ¶ 76.)

    **5.  Termination**

    On December 23, 2011, Ashley terminated Plaintiff's
employment citing his "excessive absenteeism" and "the
complaints made against [Plaintiff] from [his] co-
workers."  (Qualman Decl., Exh. D.)  Based on the
volume of complaints of inappropriateness, Leighty, the
primary decisionmaker regarding Plaintiff's
termination, believed Plaintiff was not suited for the
job, had violated Ashley's workplace behavior policies,
and could not act as a leader overseeing and managing

1   employees and relationships with third parties.

2   (Leighty Decl. ¶ 8.)  Ashley's harassment policy

3   prohibits sexually harassing conduct, including

4   unwelcome sexual advances, verbal commentary about an

5   individual's body, and verbal conduct of a sexual

6   nature.  (Evanson Decl., Exh. K.)

7        Plaintiff disputes the bases for his termination.

8   Plaintiff contends Ashley terminated him because he was

9   on medical leave and because of his age.  (SGI ¶¶ 79-

10  80.)  Plaintiff believes Ashley waited to solicit false

11  accusations from his coworkers until the day he was

12  away from work for an age-related medical procedure,

13  namely a colonoscopy, in order to push him out.[10]

14  (McInteer Depo. 190:15-25; 207:8-208:15; 212:3-5.)

15  Plaintiff testified that he believes each of the

16  complainants had reasons to falsify their allegations

17  against Plaintiff, including mental instability and

18  resentment due to Plaintiff's hiring.  (McInteer Depo.

19  73:4-12, 79:6-22.)  Plaintiff notes that other

20  employees interviewed by Qualman indicated that

21  Plaintiff was a "good" and "intelligent guy."  (Qualman

22  Decl., Exh. A.)

23        As a result of Defendants' conduct, Plaintiff

24  suffered depression, stress, difficulty sleeping,

_____

25  [10]  There is a dispute about the date of Plaintiff's
colonoscopy.  Plaintiff testified it occurred on
26  November 14, 2011 (McInteer Depo. 187:24-188:17), but
subsequently declared it took place on November 21,
27  2011 (McInteer Decl. ¶ 10).

impatience with his family, lethargy, anxiety, inability to keep cohesive thoughts or make decisions, isolation, and became withdrawn and inactive.  (SUF ¶ 97; SGI ¶ 97.)

**III. DISCUSSION**

**A.  Wrongful Termination**

Plaintiff states two claims for wrongful termination based on discrimination against his membership in two protected classes.  The first cause of action alleges that Plaintiff was terminated because of his age and the second because of his disability. (Compl. ¶¶ 44-61.)  The California Fair Employment and Housing Act ("FEHA") outlaws employment discrimination against individuals over forty years old.  See Cal. Gov't Code §§ 12926, 12940(a).  FEHA also prohibits unlawful discrimination based on a disability pursuant to California Government Code Section 12940(a).

"California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination . . . ."  Guz v. Bechtel National, Inc., 24 Cal.4th 317, 354 (2000). This framework applies to wrongful termination claims based on age and disability discrimination.  See id.; Sandell v. Taylor-Listug, Inc., 188 Cal. App. 4th 297, 307 (2010); Nielsen v. Trofholz Technologies, Inc., 750

F. Supp. 2d 1157, 1164 (E.D. Cal. 2010), aff'd, 470 F.
App'x 647 (9th Cir. 2012).

> A plaintiff must first establish a
> prima facie case of discrimination. If
> the plaintiff establishes a prima
> facie case, the burden then shifts to
> the defendant to articulate a
> legitimate non-discriminatory reason
> for its employment decision. Then, in
> order to prevail, the plaintiff must
> demonstrate that the employer's
> alleged reason for the adverse
> employment decision is a pretext for
> another motive which is
> discriminatory.

Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir.
1994) (citations omitted); McDonnell Douglas Corp. v.
Green, 411 U.S. 792, 802-04 (1973); Morgan v. Regents
of Univ. of Cal., 88 Cal. App. 4th 52, 68-69 (2000);

**1.  Disability Discrimination Prima Facie Case**

In order to establish a prima facie case of
disability discrimination under the FEHA, a plaintiff
must show (1) he suffered from a disability, (2) he
could perform the essential duties of his job with or
without reasonable accommodation, and (3) he was
subjected to adverse employment action because of his
disability.  Sandell, 188 Cal. App. 4th at 310.

Defendants do not challenge the fact that Plaintiff
suffered from a disability, which he claims includes
Acute Stress Disorder which began on November 23, 2011,

vertigo which caused him to miss one day of work (SGI ¶ 102), and his colonoscopy.[11]

Defendants argue that Plaintiff has no evidence to suggest Ashley terminated him because of his disability. (Motion at 10.) Plaintiff contends that the coincidence in timing between his medical leave and termination and between investigation into the complaints and his colonoscopy demonstrate a prima facie case of discrimination. (Opp'n at 9-10.) Plaintiff's termination letter also cited "excessive absenteeism" as a basis for his termination, but he argues these absences were medically excused. (Id. at 10.) Moreover, Plaintiff believes Defendants' failure to use its progressive discipline policy for Plaintiff's absences constitutes evidence of discrimination. (Id.)

Numerous courts note that "[t]he prima facie burden is light; the evidence necessary to sustain the burden

---

[11] It does not appear that Plaintiff's colonoscopy constitutes a disability under the FEHA. In order to qualify as a "physical disability" under the FEHA, the "disease, disorder, condition, cosmetic disfigurement, or anatomical loss" must "limit[] a major life activity." Cal. Gov't Code § 12926(m). Missing work for one day for a routine medical procedure unrelated to any identified disease, disorder, or condition does not constitute a disability. In addition, there is no evidence that Ashely was aware of Plaintiff's vertigo or that it limited a major life activity, given that Plaintiff missed only one day of work. See Cal. Gov't Code § 12926(m). Nonetheless, because Ashley does not challenge Plaintiff's assertion that he was disabled, the Court assumes this element is met. (Reply at 2 n.1.)

is minimal." Sandell, 188 Cal. App. 4th at 310.
Because an "employee need only offer sufficient
circumstantial evidence to give rise to a reasonable
inference of discrimination," id., the Court finds that
these facts are sufficient to establish a prima facie
case that Plaintiff was subjected to adverse employment
action because of his disability. See Diaz v. Fed.
Express Corp., 373 F. Supp. 2d 1034, 1064 (C.D. Cal.
2005) ("Although Defendant may have fired Plaintiff
because of his absences, Plaintiff alleges that his
absences were caused by his mental condition. Thus, if
the trier of fact finds that Plaintiff's condition
constituted a disability for purposes of the FEHA, and
if the trier of fact believes that Plaintiff's absences
were caused by that disability, Plaintiff will have
established that Defendant's termination of Plaintiff
was an adverse employment action taken because of
Plaintiff's disability."); Arteaga v. Brink's, Inc.,
163 Cal. App. 4th 327, 334 (2008) ("[T]emporal
proximity, by itself, may be sufficient to establish a
prima facie case of discrimination . . . ").

Defendants also argue that Plaintiff cannot make a
prima facie case for disability discrimination because
he cannot demonstrate that he was performing
satisfactorily at the time of his termination. (Motion
at 9-10 (citing Zeinali v. Raytheon Co., 636 F.3d 544,
552 (9th Cir. 2011).) However, California courts have

1   questioned whether Plaintiff must make this showing at
2   the prima facie stage on summary judgment.  <u>See</u>
3   <u>Sandell</u>, 188 Cal. App. 4th at 322 ("While we agree that
4   a plaintiff must demonstrate some basic level of
5   competence at his or her job in order to meet the
6   requirements of a prima facie showing, the burden-
7   shifting framework established in <u>McDonnell Douglas</u>
8   compels the conclusion that any measurement of such
9   competency should, to the extent possible, be based on
10  objective, rather than subjective, criteria.").  As
11  <u>Sandell</u> states, courts that have considered this factor
12  at the prima facie stage rely on objective performance
13  reviews and evidence of demotions to demonstrate
14  unsatisfactory performance.  <u>See Holtzclaw v.</u>
15  <u>Certainteed Corp.</u>, 795 F. Supp. 2d 996, 1010 (E.D. Cal.
16  2011).  Defendants have not produced any such objective
17  evidence for the Court's consideration.

18      **2.  Age Discrimination Prima Facie Case**
19      "In order to make out a prima facie case of age
20  discrimination under FEHA, a plaintiff must present
21  evidence that the plaintiff (1) is over the age of 40;
22  (2) suffered an adverse employment action; (3) was
23  performing satisfactorily at the time of the adverse
24  action; and (4) suffered the adverse action under
25  circumstances that give rise to an inference of
26  unlawful discrimination, i.e., evidence that the
27  plaintiff was replaced by someone significantly younger

25

than the plaintiff." <u>Sandell</u>, 188 Cal. App. 4th at 321.

Defendants challenge Plaintiff's ability to satisfy the third and fourth elements of his prima facie case. (Motion at 10-11.) Because the Court finds that Plaintiff cannot establish any evidence giving rise to an inference of unlawful discrimination based on age, the Court does not address the third element concerning Plaintiff's performance.

Plaintiff relies on a single conversation in which, according to Plaintiff, Leighty asked him his age. An isolated and stray remark is insufficient to establish discrimination without other indicia of discriminatory intent. <u>See Reid v. Google, Inc.</u>, 50 Cal. 4th 512, 541, 235 P.3d 988, 1008 (2010) ("A stray remark alone may not create a triable issue of age discrimination."). Moreover, Leighty's question does not raise any inference that his decision to terminate Plaintiff was motivated by animus against Plaintiff's age. By merely asking his age, Leighty's comment is ambiguous and the Court cannot infer the question is reflective of any discriminatory animus, as opposed to for example curiosity or admiration.

At the hearing, Plaintiff argued that the proximity in time between Leighty's question and his investigation of the coworker complaints is sufficient to establish a prima facie case of age discrimination.

1  However, the evidence is undisputed that Leighty only

2  became aware of the employee complaints a week after

3  his conversation with Plaintiff and thus could not have

4  investigated them sooner.  (SUF ¶ 46; SGI ¶ 46.)  An

5  ambiguous stray remark a month prior to Plaintiff's

6  termination is insufficient to raise an inference of

7  discrimination.[12]  See <u>Harris v. City of Santa Monica</u>,

8  56 Cal. 4th 203, 231 (2013) ("[S]ection 12940(a) does

9  not purport to outlaw discriminatory thoughts, beliefs,

10  or stray remarks that are unconnected to employment

11  decisionmaking."); <u>Korte v. Dollar Tree Stores, Inc.</u>,

12  No. CIV. S-12-541 LKK, 2013 WL 2604472, at *13-14 (E.D.

13  Cal. June 11, 2013) ("[E]ven when considered with the

14  other evidence presented by Korte, the stray remarks he

15  documents are insufficient to make out a prima facie

16  case that age discrimination played a role in his

17  termination.").

18      Plaintiff argues, without any supporting evidence,

19  that Ashley "conjured up" these complaints in order to

20  support his discriminatory termination.  However, the

21  evidence is undisputed that the interviews of

22  Plaintiff's coworkers were spurred by Qualman reporting

23  _____

[12] Even if such evidence were sufficient to
establish a prima facie case, it is unquestionable that
the temporal proximity of the stray remark would not be
sufficient proof of pretext to overcome summary
judgment.  See Arteaga v. Brink's, Inc., 163 Cal. App.
4th at 354 ("[W]e affirmatively reject the notion that
temporal proximity standing alone can be sufficient
proof of [pretext].") (quotation omitted).

1   Pavloff's complaint to Leighty, who ordered an

2   immediate investigation.  (Qualman Decl. ¶¶ 5-6.)

3       "Even if plaintiff had provided some direct

4   evidence of discriminatory motive, it would be weakened

5   by the fact that the same person was responsible for

6   [his] hiring and [his] firing, thereby creating a

7   'strong inference' that there was 'no discriminatory

8   motive.'"  Krylova v. Genentech Inc., __ F. Supp. 2d

9   __, 2014 WL 1478698, at *7 (N.D. Cal. Apr. 14, 2014)

10  (quoting Bradley v. Harcourt, Brace, and Co., 104 F.3d

11  267, 270-71 (9th Cir. 1996)).  The same-actor inference

12  is "a strong inference that a court must take into

13  account on a summary judgment motion."  Schechner v.

14  KPIX-TV, 686 F.3d 1018, 1026 (9th Cir. 2012) (internal

15  quotation omitted).  Both Qualman and Leighty were

16  involved in the decision to hire Plaintiff and to

17  terminate him only four months later.  "[W]here the

18  same actor is responsible for both the hiring and the

19  firing of a discrimination plaintiff, and both actions

20  occur within a short period of time, a strong inference

21  arises that there was no discriminatory motive."

22  Bradley, 104 F.3d at 270-71.  Plaintiff provided no

23  evidence to counter this strong inference.[13]

_____

24  [13] Plaintiff argues he needs additional discovery to
    determine the extent of Leighty and Fasnacht's role in
25  his hiring, including taking the deposition of
    Fasnacht.  Plaintiff asks the Court to grant Plaintiff
26  additional time to conduct discovery.  Plaintiff has
    not complied with Rule 56(d), which requires that "[a]
27  party requesting a continuance pursuant to Rule [56(d)]
    (continued . . .)

28

1     Finally, Plaintiff cannot show that he was replaced

2  by a substantially younger employee.  <u>See</u> <u>O'Connor v.</u>

3  <u>Consol. Coin Caterers Corp.</u>, 517 U.S. 308, 313 (1996)

4  ("[A]n inference [that a decision was based on age

5  discrimination] cannot be drawn from the replacement of

6  one worker with another worker insignificantly

7  younger.").  While Plaintiff was 62 years old during

8  his employment, his replacement was 56 at the time of

9  hire.  Plaintiff does not contest this fact; instead,

10  he argues that he lacks sufficient information as to

_____

( . . . continued)

must identify by affidavit the specific facts that
further discovery would reveal, and explain why those
facts would preclude summary judgment."  Tatum v. City
& Cnty. of San Francisco, 441 F.3d 1090, 1100 (9th Cir.
2006).  Here, counsel's affidavit conclusorily states
that additional discovery "could assist Plaintiff in
opposing the motion" and vaguely describes some
questions counsel would like answered.  (Nowels Decl. ¶
3.)  Plaintiff does not describe the specific facts
that would be revealed or why this discovery would
preclude summary judgment.  "Failure to comply with the
requirements of Rule [56(d)] is a proper ground for
denying discovery and proceeding to summary judgment."
Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439,
1443 (9th Cir. 1986); see also Tatum, 441 F.3d at 1100-
01 (finding that an attorney declaration was
insufficient to support a Rule 56 continuance where the
declaration failed to specify specific facts to be
discovered or explain how a continuance would allow the
party to produce evidence precluding summary judgment).
Plaintiff fails to comply with the requirements of Rule
56(d) and has not met his burden to identify specific
facts and why they would preclude summary judgment.
Moreover, Plaintiff had nearly 18 months to conduct
discovery before Defendants moved for summary judgment,
and has not described why this was insufficient time to
investigate his case.  Brae Transp., 790 F.2d at 1443
(a party cannot complain if it fails to pursue
discovery diligently before summary judgment).  The
Court DENIES Plaintiff's request for time to conduct
additional discovery.

the identity of his replacement and his job duties,
which "has hampered his ability to discover the
accuracy of Defendants' statements."  (Opp'n at 11.)
Plaintiff's lack of evidence is insufficient to meet
his burden to raise an inference of unlawful
discrimination.  Lacking contrary evidence, the fact
that Plaintiff was replaced by an employee of
approximately the same age strongly suggests that his
termination was not based on age-based animus.  See
Smith v. Int'l Bhd. of Elec. Workers, 109 Cal. App. 4th
1637, 1658 (2003); Buchanan v. Safeway Stores, Inc.,
No. C 95-1658 FMS, 1996 WL 723089, at *6 (N.D. Cal.
Dec. 6, 1996), aff'd, 133 F.3d 925 (9th Cir. 1997)
("The Court finds that plaintiff did not establish a
prima facie case because he failed to prove . . . he
was replaced by a younger worker.").

A single question regarding Plaintiff's age is
insufficient to establish a prima facie case of age
discrimination.  Accordingly, Defendants are entitled
to summary judgment on Plaintiff's first cause of
action for FEHA age discrimination.[14]

_____

[14] At the hearing, Plaintiff argued that his
colonoscopy supported his age discrimination claim.  It
appears that Plaintiff contends that a colonoscopy is
an age-related medical procedure, and terminating him
after he took one day off for this procedure is
evidence of age discrimination.  However, Plaintiff
presents no evidence that any decisionmaker was aware
that he had a colonoscopy in November 2011.  See Avila
v. Cont'l Airlines, Inc., 165 Cal. App. 4th 1237, 1251
(2008) ("decision maker must be aware of disability
(continued . . .)

### 3.  Legitimate Non-Discriminatory Reasons

Once a FEHA plaintiff demonstrates a prima facie case, the burden shifts to the employer to articulate some legitimate non-discriminatory reason for the employee's discharge.  <u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Guz</u>, 24 Cal.4th at 355-356.  Defendants must make a "sufficient showing of a legitimate reason for discharge."  <u>King v. United Parcel Serv., Inc.</u>, 152 Cal. App. 4th 426, 433 (2007).  Defendants' "burden is one of production, not persuasion, thereby involving no credibility assessment."  <u>See</u> <u>Day v. Sears Holdings Corp.</u>, 930 F. Supp. 2d 1146, 1169 (C.D. Cal. 2013).

Although Plaintiff was able to make a prima facie case for disability discrimination, he was unable to carry his burden on age discrimination.  Nevertheless, as to both claims, Defendants present evidence of a legitimate non-discriminatory reason for Plaintiff's termination unrelated to age or disability.

In support of its decision to terminate, Ashley points to the numerous coworker complaints about Plaintiff's sexually explicit comments and inappropriate workplace behavior.  Such complaints, supported by written documentary evidence, are sufficient to rebut a prima facie case of discriminatory discharge.  <u>See</u> <u>Batista v. Stewart</u>

---

( . . . continued)
'when the adverse employment decision was made'") (quotation omitted).

31

1   <u>Enterprises, Inc.</u>, 126 F. App'x 767, 769 (9th Cir.

2   2005) (finding employer proffered a non-discriminatory

3   reason for employee's termination with evidence of

4   "'inappropriate, sexual, and willful misconduct,'

5   reported by several of Batista's co-workers and

6   documented in an investigation").

7      As a second basis for termination, Ashley cites

8   Plaintiff's excessive absenteeism in violation of the

9   Attendance Policy. (Motion at 13.) The Policy allows

10   Ashley to take corrective action, including

11   termination, if it deems an employee's absences within

12   a 365-day period as excessive, whether excused or

13   unexcused. (Evanson Decl., Exh. F.) Ashley found

14   Plaintiff's 30 days of absences within a 4-month period

15   to be excessive and cited this as a basis for his

16   discharge in his termination letter. (Qualman Decl.,

17   Exh. D.)

18      Courts have recognized that violation of company

19   policies is a legitimate, nondiscriminatory reason for

20   terminating an employee. <u>Day v. Sears Holdings Corp.</u>,

21   930 F. Supp. 2d 1146, 1170 (C.D. Cal. 2013). Several

22   courts have specifically held that "excessive

23   attendance infractions" established a nondiscriminatory

24   reason for discharge. <u>Hooker v. Parker Hannifin Corp.</u>,

25   548 F. App'x 368, 370 (9th Cir. 2013); <u>Dumas v. New</u>

26   <u>United Motor Mfg., Inc.</u>, 305 F. App'x 445, 448 (9th

27   Cir. 2008) ("NUMMI proffered a legitimate, non-

discriminatory missed reason for terminating Mr. Dumas—
his violation of company policy requiring written
permission for extended leaves of absence"). But see
Diaz v. Fed. Express Corp., 373 F. Supp. 2d at 1065
("[I]f the trier of fact finds that Plaintiff was
disabled for purposes of FEHA, Defendant's firing of
Plaintiff on the basis of absences incurred as a result
of that disability would not constitute a legitimate,
non-discriminatory reason for terminating Plaintiff,
and Plaintiff would be able to establish disability
discrimination on the basis of Plaintiff's prima facie
case.").

Defendants' reasons for terminating Plaintiff,
namely complaints of inappropriate behavior from
coworkers and violations of company attendance
policies, constitute legitimate and non-discriminatory
bases for removal. Guz, 24 Cal.4th at 355.

### 4. Pretext

Once an employer has established a legitimate, non-
discriminatory reason for termination, to "'avoid
summary judgment . . ., an employee claiming
discrimination must offer substantial evidence that the
employer's stated nondiscriminatory reason for the
adverse action was untrue or pretextual, or evidence
the employer acted with a discriminatory animus, or a
combination of the two, such that a reasonable trier of
fact could conclude the employer engaged in intentional

discrimination.'"  <u>Wills v. Superior Court</u>, 195 Cal.
App. 4th 143, 160, (2011) (citation omitted); <u>King</u>, 152
Cal. App. 4th at 433 (The discharged employee seeking
to avert summary judgment "must produce substantial
responsive evidence to show that [the employer's]
ostensible motive was pretextual; that is, that a
discriminatory reason more likely motivated the
employer or that the employer's explanation is unworthy
of credence.").  The plaintiff must demonstrate "such
weaknesses, implausibilities, inconsistencies,
incoherencies, or contradictions in the employer's
proffered legitimate reasons for its action that a
reasonable factfinder could rationally find them
unworthy of credence, . . . and hence infer that the
employer did not act for the [ . . . asserted] non-
discriminatory reasons."  <u>Morgan v. Regents of Univ. of
Cal.</u>, 88 Cal. App. 4th 52, 75 (2000) (citation
omitted); <u>Villanueva v. City of Colton</u>, 160 Cal. App.
4th 1188, 1195 (2008).  Circumstantial evidence must be
"specific and substantial." <u>Morgan</u>, 88 Cal. App. 4th at
69; <u>Aragon v. Republic Silver State Disposal Inc.</u>, 292
F.3d 654, 661 (9th Cir. 2002).

     **i.   Excessive Absences**

    Plaintiff argues that Defendants' citation of
"excessive absenteeism" as a basis for his termination
is evidence of discriminatory animus and pretext.
(Opp'n at 9.)  The uncontroverted evidence shows that

1   Plaintiff's absences occurred because of his
2   disability.  Plaintiff submitted several Work Status
3   Reports to Defendants which clearly indicate he
4   required time off work due to his diagnosis of "major
5   depression" or "depression." (Evanson Decl., Exhs. H,
6   I, J.)  Thus, it is undisputed that Defendants were
7   aware of Plaintiff's medical condition and its causal
8   relationship to an undisputed majority of Plaintiff's
9   absences from November 23, 2011 to December 23, 2011.
10  (SUF ¶¶ 69-70; SGI ¶¶ 69-70.)  See Brundage v. Hahn, 57
11  Cal. App. 4th 228, 236-37 (1997) ("[A] plaintiff must
12  prove the employer had knowledge of the employee's
13  disability when the adverse employment decision was
14  made."); see also Avila, 165 Cal. App. 4th at 1248
15  ("[T]o show that Continental acted with discriminatory
16  intent, plaintiff was required to produce evidence that
17  the Continental employees who decided to discharge him
18  knew of his disability.").

19      "[C]onduct resulting from a disability is
20  considered to be part of the disability, rather than a
21  separate basis for termination." Humphrey v. Mem'l
22  Hospitals Ass'n, 239 F.3d 1128, 1139-40 (9th Cir.
23  2001).  It is undisputed that Plaintiff's absences
24  resulted from his disability and thus are considered
25  part of the disability.  By citing his absences as a
26  basis for termination, Defendants ipso facto cited his
27  disability.  See Gonzalez v. ATI Sys. Int'l, Inc.,

B223779, 2011 WL 1902582, at *8 (Cal. Ct. App. May 20, 2011) ("When an employer discharges an employee for conduct that is caused by the employee's disability, such as absenteeism, then the employer has terminated the employee because of his or her disability.").

Humphrey is directly applicable here.  In Humphrey, the court analyzed disability discrimination claims under the Americans with Disability Act ("ADA") together with FEHA claims.  Humphrey, 239 F.3d at 1133 n.6 ("Because the FEHA provisions relating to disability discrimination are based on the ADA, decisions interpreting federal anti-discrimination laws are relevant in interpreting the FEHA's similar provisions.").[15]  The employee in Humphrey suffered from obsessive compulsive disorder ("OCD") which she claimed caused her to be chronically late or absent from work. Id. at 1134.  Her employer terminated her and its "stated reason for Humphrey's termination was absenteeism and tardiness." Id. at 1139.  The court reasoned that the "link between disability and termination is particularly strong" where a "known disability [] leads to discharge for performance inadequacies resulting from that disability." Id. at 1140.  The court held "a jury could reasonably find

---

[15] "Federal authorities interpreting and applying the ADA are . . . . useful in interpreting FEHA, unless significant differences exist between the FEHA and ADA provisions at issue." Wills, 195 Cal. App. 4th at 167.

1   the requisite causal link between a disability of OCD

2   and Humphrey's absenteeism and conclude that MHA fired

3   Humphrey because of her disability."  Id.

4      Like in Humphrey, there undisputed evidence of the

5   causal link between Plaintiff's Acute Stress Disorder

6   and his excessive absences, and a jury could reasonably

7   conclude that Defendants terminated Plaintiff because

8   of his disability.[16]

9      Defendants argue that the Attendance Policy

10  specifically states that an employee, like Plaintiff,

11  can be terminated for excessive absences.  However,

12  even uniform application of a company policy can raise

13  a triable issue of fact where there is evidence that it

14  was a pretext for discrimination.  See Earl v. Nielsen

15  Media Research, Inc., 658 F.3d 1108, 1114 (9th Cir.

16  2011).  Moreover, the Policy does not define the number

17  of excused absences necessary to constitute "excessive

18  absenteeism," leaving Defendants substantial discretion

19  in determining violations.  See Kranson v. Fed. Exp.

20      [16] Recently in Wills v. Superior Court, 195 Cal.
21  App. 4th 143 (2011), the court "interpret[ed] FEHA as
    authorizing an employer to distinguish between
22  disability-caused misconduct and the disability itself
    in the narrow context of threats or violence against
23  coworkers."  Id. at 165-66.  The court specifically
    noted that it was not presented with the situation in
24  Humphrey and "express[ed] no opinion on whether FEHA
    permits an employer to distinguish between disability-
25  caused misconduct and the disability itself in any
    factual setting other than threats or violence against
26  coworkers."  Id. at 166.  Because Wills did not
    invalidate or address the situation presented here,
27  where there are no indicia of threats or violence, it
    does not affect the precedential value of Humphrey.

1   Corp., No. 11-CV-05826-YGR, 2012 WL 4715337, at *9
2   (N.D. Cal. Oct. 1, 2012) (refusing to grant summary
3   judgment where employer applied its discretionary
4   policy to the employee and the court was unable to find
5   as a matter of law that the application of the policy
6   was non-discriminatory).  In addition, the Policy
7   contains a progressive discipline procedure for
8   absences, which Defendants did not utilize in this
9   case, further demonstrating the flexibility of the
10  Policy and the possibility of misuse.  See Norris v.
11  Allied-Sysco Food Services, Inc., 948 F. Supp. 1418,
12  1434 (N.D. Cal. 1996) (where employer stated in writing
13  that the reason it terminated plaintiff was her
14  continuing unavailability for work and reasonable jury
15  could have concluded she was unavailable for work
16  because of her disability, a triable issue existed
17  regarding whether plaintiff's disability was a
18  motivating factor in employer's decision to terminate
19  her).  Construed in the light most favorable to
20  Plaintiff, Defendants' finding of a policy violation is
21  insufficient to warrant summary judgment where there is
22  substantial evidence of pretext.

23          ii. Employee Complaints
24      Defendants argue that there is no evidence that
25  their reliance on the employee complaints was a pretext
26  for disability discrimination.  Although the Court
27  agrees that Plaintiff failed to meet his burden of

establishing the complaints were a pretext for discrimination, the Court is unable to grant summary judgment on Plaintiff's disability discrimination claim for the reasons discussed herein.

First, Plaintiff challenges the complaints as a basis for his termination by arguing that the timing of Ashley's investigation is "highly suspect," occurring the day after Plaintiff's colonoscopy and the week after Leighty asked his age.  (Opp'n at 12.)  Even assuming a colonoscopy could be considered a disability under FEHA, "temporal proximity alone is not sufficient to raise a triable issue as to pretext once the employer has offered evidence of a legitimate, nondiscriminatory reason for the termination." Arteaga, 163 Cal. App. 4th at 353.  Given Plaintiff's short four-month employment with Ashley, Plaintiff's termination is proximate to his entire time at the Colton facility and cannot raise an inference above mere speculation.  Ashley provided uncontradicted evidence that it became aware of Pavloff's complaint on November 22, 2011 and Plaintiff was terminated a month later after several violations of Ashley's attendance policy.  Plaintiff provides no evidence, other than speculative assertions, from which a reasonable trier of fact could find the timing of his termination discriminatory.  See Granillo v. Exide Technologies, Inc., No. CV 10-1080 SJO FMOX, 2011 WL 2535112, at *15

(C.D. Cal. May 20, 2011) (granting summary judgment for employer where employee argued that the timing of investigation into policy violations was "completely suspicious" given that employer was aware of them for over a year).

Next, Plaintiff asserts that he did not do the acts alleged in the employee complaints and they therefore cannot be used as a basis for his termination. (Opp'n at 9.) However, "[i]t is the employer's honest belief in the stated reasons for firing an employee and not the objective truth or falsity of the underlying facts that is at issue in a discrimination case." King, 152 Cal. App. 4th at 436. Plaintiff presents no evidence from which a reasonable trier of fact could conclude that Ashely did not honestly believe that Plaintiff committed the inappropriate and explicit acts described in the coworker complaints. Even if Ashley was wrong to credit the three employees who made complaints against Plaintiff in the face of his contrary account, "[a]n employee in this situation cannot simply show the employer's decision was wrong, mistaken, or unwise," he must show discrimination on the basis of disability or age. Villanueva, 160 Cal. App. 4th at 1195.

Plaintiff also contends that the complaints are suspect because the employees who made them had improper motives. (Opp'n at 12-13.) Gomez allegedly made excessive complaints about everyone, Pavloff

purportedly wanted the Plaintiff's job, and Sheehan was
biased against Plaintiff because he was hired to
replace him.  (Opp'n at 12-13.)  Even if true, none of
these employee motives present any evidence of
discrimination against Plaintiff based on a protected
status.  An employer can fire an employee for any
reason or no reason at all, so long as that motive is
non-discriminatory.  See Holtzclaw, 795 F. Supp. 2d at
1011.  The FEHA does not protect Plaintiff from
personality conflicts, jealousy, or resentment.  None
of the identified motives underlying the employee
complaints could plausibly lead to the inference that
Plaintiff's termination was based on his age or
disability.

     Moreover, Gomez, Pavloff, and Sheehan were not
involved in the decision to terminate Plaintiff.
Plaintiff provides no evidence from which a factfinder
could impute his coworkers' illicit motives to his
supervisors.  "[P]laintiff's evidence must relate to
the motivation of the decision makers to prove, by
nonspeculative evidence, an actual causal link between
prohibited motivation and termination."  King, 152 Cal.
App. 4th at 433-34.  There is no evidence in the record
from which one could infer a causal link between the
employees' allegedly spiteful motivations and Ashley's
age- or disability-based termination.  See id. at 434
("But the animosity of coworkers, even if superior to

41

plaintiff in rank or tenure, is not material to the
sole issue contested by UPS. There is no evidence that
Rogers, Murphy, or Zakoor participated in the decision
to fire him. In the absence of evidence that they were
involved in the decision-making process, their feelings
regarding plaintiff's performance have no bearing in
the summary judgment proceedings, and their bitterness
or mistreatment, if any, is not material to whether
plaintiff was terminated because he was disabled.").

### iii. Mixed Motive

Although Plaintiff met his burden of demonstrating
Defendants' reliance on excessive absenteeism was a
pretext for discrimination, the Court finds Plaintiff
fails to produce substantial evidence showing that the
employee complaints were a pretext for allegedly
Defendants' discriminatory termination.  Thus, the
Court is faced with a scenario where one basis for
Plaintiff's termination is legitimate and non-
discriminatory, while the other could be found unworthy
of credence such that a reasonable trier of fact could
conclude the employer engaged in intentional
discrimination.

At the hearing, the Court asked whether the two
reasons Defendants' cited for Plaintiff's termination –
the employee complaints and the excessive absences –
were independent causes of his discharge.  Defendants
refused to provide a concrete response.  The McDonnell

1  <u>Douglass</u> framework relied on by the parties

2  "presupposes that the employer has a single reason for

3  taking an adverse action against the employee and that

4  the reason is either discriminatory or legitimate."

5  <u>Harris v. City of Santa Monica</u>, 56 Cal.4th 203, 215

6  (2013).  Here, Defendants cite two reasons for

7  Plaintiff's termination.  If Defendants' two reasons

8  are not alternate and independent, then this presents a

9  case of mixed-motives.  <u>Cf.</u> <u>Odima v. Westin Tucson</u>

10 <u>Hotel Co.</u>, 991 F.2d 595, 600 (9th Cir. 1993) ("[A]n

11 employer articulates several alternative and

12 independent legitimate nondiscriminatory reasons, the

13 falsity of one does not necessarily justify the finding

14 that the remaining articulated reasons were

15 pretextual.") (quotation omitted).  A "mixed-motive"

16 arises when a "mix of discriminatory and legitimate

17 reasons motivated the employer's decision." <u>Harris</u>, 56

18 Cal. 4th at 215.  Mixed motive is an affirmative

19 defense to Plaintiff's disability discrimination claim

20 and must be pled and proved by Defendants.  <u>See</u> <u>id.</u> at

21 225; BAJI 12-26.  In such cases, a plaintiff may

22 prevail on a FEHA claim by proving that "discrimination

23 was a substantial factor motivating a particular

24 employment decision," even if the decision was also

25 based on non-discriminatory criteria.  <u>Harris</u>, 56 Cal.

26 4th at 232.  Then, the burden shifts to the employer to

27 establish by a preponderance of the evidence that its

1    legitimate reason, standing alone, would have induced
2    it to make the same decision at the same time.   BAJI
3    12-26.   The parties did not brief this issue or discuss
4    it at the hearing.

5         As discussed above, the Court finds a reasonable
6    jury could infer that Defendants' reliance on
7    "excessive absenteeism" constituted discrimination on
8    the basis of Plaintiff's disability.   On the evidence
9    presented, the Court is unable to find that Plaintiff's
10   excessive absences were not a substantial factor
11   motivating Plaintiff's termination.   In addition, there
12   is a triable issue as to whether Plaintiff's absences
13   or the employee complaints were a substantial factor
14   prompting his termination.   See <u>Jadwin v. Cnty. of</u>
15   <u>Kern</u>, 610 F. Supp. 2d 1129, 1183 (E.D. Cal. 2009)
16   ("There is a triable issue as to whether it was
17   Plaintiff's absence from work during his protected
18   leaves under the FMLA/CFRA, including his full-time
19   leave, that prompted the removal decision, or whether
20   it was his continued unprotected absence *after* his
21   protected leave expired which prompted the removal
22   decision.").

23        Accordingly, the Court denies Defendants' motion
24   for summary judgment on Plaintiff's claim for
25   disability discrimination under FEHA.

26

27

44

**B.    Exempt Status**

Defendants move for summary judgment on Plaintiff's fourth through ninth causes of action on the ground that Plaintiff is exempt from these laws pursuant to the administrative exemption.  (Motion at 15-21.) These claims for relief allege labor code and unfair competition violations for failure to pay overtime, waiting time penalties, interest on overtime, and failure to provide itemized statements.  (Compl. ¶¶ 69-100.)  All of these claims are premised on the argument that Ashley improperly classified Plaintiff as an exempt employee who was not entitled to overtime and related requirements.  (Opp'n at 13.)  Defendants argue Plaintiff was properly classified as an administrative employee under California's Industrial Welfare Commission ("IWC") Wage Order No. 9.  Cal. Code Regs. tit. 8, § 11090.

IWC Wage Order No. 9, which regulates wages, hours, and working conditions in California's transportation industry, exempts from overtime-pay requirements "persons employed in administrative, executive, or professional capacities."  Cal. Code Regs. tit. 8, § 11090(1)(A); see also Cal. Lab. Code § 515(a) ( "The Industrial Welfare Commission may establish exemptions from the requirement that an overtime rate of compensation be paid . . . for executive,

administrative, and professional employees, provided
that the employee is primarily engaged in the duties
that meet the test of the exemption, customarily and
regularly exercises discretion and independent judgment
in performing those duties, and earns a monthly salary
equivalent to no less than two times the state minimum
wage for full-time employment.").

The administrative exemption applies to any
employee:

    (a)  Whose duties and responsibilities
        involve . . .:

        (i)    The performance of office
             or non-manual work directly
             related to management
             policies or general
             business operations of his
             employer or his/her
             employer's customers;

. . . and . . .

    (b)  Who customarily and regularly
        exercises discretion and
        independent judgment; and

    (c)  Who regularly and directly assists
        a proprietor, or an employee
        employed in a bona fide executive
        or administrative capacity . . .;
        or

    (d)  Who performs under only general
        supervision work along specialized
        or technical lines requiring
        special training, experience, or
        knowledge; or

    (e)  Who executes under only general
        supervision special assignments
        and tasks; and

    (f) Who is primarily engaged in duties
        that meet the test of the exemption.

Cal. Code Regs. tit. 8, § 11090(1)(A)(2)(a)-(f).   In addition, the employee must earn a monthly salary equivalent to no less than two times the state minimum wage for full-time employment.  <u>Id.</u> § 11090(1)(A)(2)(g).  "The employer bears the burden of proving an employee is properly designated as exempt." <u>In re United Parcel Serv. Wage & Hour Cases</u>, 190 Cal. App. 4th 1001, 1010 (2010) [hereinafter "<u>In re UPS</u>"].

The question of whether Plaintiff is an exempt administrative employee presents a mixed question of law and fact.  <u>Ramirez v. Yosemite Water Co.</u>, 20 Cal.4th 785 (1999).  The issue of what Plaintiff did as an employee for Defendants is a question of fact, while the precise scope of the exemption is a question of law.  <u>Id.</u>

There is no dispute that Plaintiff earned more than two times the state minimum wage.  (Opp'n at 16.) While Plaintiff contends that Ashley has not demonstrated any of the remaining requirements, he mainly disputes that he was "primarily engaged" in duties that "directly related to management policies or general business operations of his employer."  (Opp'n at 13-16.)  "Because the test is conjunctive, Plaintiff need only demonstrate that Defendants have not met their burden as to one part of the test." <u>Rieve v. Coventry Health Care, Inc.</u>, 870 F. Supp. 2d 856, 869

1  (C.D. Cal. 2012).  The Court thus focuses on primarily

2  engaged requirement.

3      The caselaw is clear that in order to prevail on

4  its Motion, Ashley must establish that Plaintiff was

5  "primarily engaged" in duties described in the

6  exemption.  "Primarily" is defined by the California

7  Labor Code as "more than one-half of the employee's

8  worktime."  Cal. Labor Code § 515(e).  The California

9  Supreme Court described the method of determining

10 whether work is exempt or nonexempt as "a purely

11 quantitative approach."  Ramirez, 20 Cal.4th at 797;

12 see also Greko v. Diesel U.S.A., Inc., 277 F.R.D. 419,

13 423 (N.D. Cal. 2011).

14     It is undisputed that the duties and

15 responsibilities of the Transportation Care Manager

16 qualify for the administrative exemption.  (Opp'n at

17 14; SGI ¶ 29.)  Ashley contends it expected Plaintiff

18 to primarily perform these duties "from the first day"

19 he arrived at the Colton facility.  (Martinez Decl. ¶¶

20 6, 7, 12.)  However, Plaintiff argues that he had not

21 yet assumed the role for which he was hired, and

22 performed other duties to prepare for his anticipated

23 position while waiting for Sheehan to leave the

24 company.  (Opp'n at 13.)  During Plaintiff's three-

25 month employment,[17] he asserts he was primarily engaged

26 _____

27 [17]  Although Plaintiff was actually employed by
   Ashley for four months, he did not come into work for
   the final month of his employment.  The Court does not
   (continued . . .)

48

1 | in nonexempt duties including training, manual labor,
2 | clerical work, or "filling in the time." (McInteer
3 | Depo. 55:13-56:11; Opp'n at 14-16.)

4 | Thus, the central issue raised is whether the Court
5 | should consider Defendants' expectations of Plaintiff's
6 | duties or the tasks Plaintiff actually performed to
7 | determine the duties in which he was primarily engaged.
8 | In order to ascertain Plaintiff's primary duties,
9 | "[t]he work actually performed by the employee during
10 | the course of the workweek must, first and foremost, be
11 | examined and the amount of time the employee spends on
12 | such work, together with the employer's realistic
13 | expectations and the realistic requirements of the job
14 | . . . ." Cal. Code Regs. tit. 8, § 11090. Courts have
15 | frequently noted that the Court's "foremost"
16 | consideration in determining exempt status is "the
17 | actual job duties performed by that employee." In re
18 | UPS, 190 Cal. App. 4th at 1014-15; see also Marlo v.
19 | United Parcel Serv., Inc., 639 F.3d 942, 948 (9th Cir.
20 | 2011) ("[T]he Court must determine whether any given
21 | class members (or all the class members) spend more
22 | than 51% of their time on managerial tasks in any given
23 | workweek.") (internal quotation omitted). Thus, both
24 | the employer's expectations and the employee's actual
25 | tasks must be considered by the Court, but particular
26 |

_____

( . . . continued)
27 | consider the time Plaintiff was absent in determining
his exempt status.

emphasis is given to the employee's actual activities
while employed.[18]

   In order to navigate this tricky balancing between
expectations and actual performance, the California
Supreme Court directs courts to "inquir[e] into the
realistic requirements of the job." Ramirez, 20
Cal.4th at 802.  "In other words, an employer cannot
rely on an idealized job description and the employee
cannot claim he was nonexempt based on his own
substandard performance."  Greko, 277 F.R.D. at 423.

   Here, there is a substantial disparity between
Ashley's expectations of Plaintiff and Plaintiff's
actual activities while employed.  In his deposition,
Plaintiff testified that he spent between 20 to 45
percent of his time on clerical billing work, which
would not fall under the administrative exemption.
(McInteer Depo. 42:25-44:1.)  Ashley's expectations of
Plaintiff did not include any billing work.  (Martinez
Decl. ¶¶ 7, 12.)  Similarly, Plaintiff testified that
he spent up to 50 percent of his time observing and
performing manual tasks in the warehouse, on the
trucks, and in the yard and dock.  (Id. 44:2-46:24.)
Ashley's expectations did not include any manual labor

---

[18] At the hearing, Defendants incorrectly argued
that they could prove the exemption applied either by
showing the duties Plaintiff actually performed or by
establishing the employer's realistic expectations.
Both the language of Wage Order No. 9 and caselaw make
clear that is not the law.

1  or direct work with trucks or shipping.  (Martinez

2  Decl. ¶¶ 7, 12.)

3       Instead, Ashley expected Plaintiff would take on a

4  supervisory role over the clerical staff and drivers.

5  (Id.)  It further anticipated Plaintiff would observe,

6  evaluate, and analyze transportation operations and

7  personnel in the facility in order to provide

8  recommendations to improve efficiencies and implement

9  improvements.  (Id.)  However, there is no evidence

10  that Plaintiff actually performed any evaluations or

11  analysis, made any recommendations or improvements, or

12  acted as a supervisor to other staff.

13       The discrepancy between Ashley's expectations and

14  Plaintiff's activities appears to stem primarily from

15  the fact that Plaintiff was in training during his

16  three-month employment.[19]  (McInteer Depo. 45:13-21.)

17  Although Martinez testified that Ashley expected

18  McInteer to take on management tasks as soon as he

19  joined the company, Martinez also acknowledges that

20  Plaintiff was not expected to "have a full grasp of the

21  ────────────────────

[19]  Given the substantial discrepancy between the
22  expected duties and Plaintiff's actual performance, one
would assume Ashley would have reprimanded Plaintiff or
23  cited his deficient performance as a basis for his
termination.  Ashely did not so cite either in this
24  litigation or in its termination letter.  See Ramirez,
20 Cal.4th at 802 (stating that, in determining the
25  "realistic requirements" of a job, a trial court should
consider "whether there was any concrete expression of
26  employer displeasure over an employee's substandard
performance, and whether these expressions were
27  themselves realistic given the actual overall
requirements of the job").

1  personnel and operations at the Colton facility" until
2  after he became the sole Transportation Care Manager.
3  (Martinez Decl. ¶¶ 6, 11-12.)  This acknowledgement
4  appears to be in conformity with Plaintiff's
5  understanding.  Plaintiff testified that the purpose of
6  his nonexempt tasks were to enable him to learn as much
7  as he could about the operation in order to perform his
8  exempt management role once Sheehan left.  (McInteer
9  Depo. 44:11-45:5.)  In accordance with Martinez and
10 Plaintiff's testimony, the Court finds that the
11 "realistic requirements" of Plaintiff's position
12 necessitated that he undergo training in the clerical,
13 shipping, and transportation departments prior to using
14 his discretion and judgment to effect the policies or
15 operations in these departments.[20]  <u>Ramirez</u>, 20 Cal.4th
16 at 802.
17       To the extent that Defendants contend that
18 Plaintiff was not "primarily" in training during his
19 three-month employment (Reply at 8), Plaintiff presents
20 evidence to dispute this material fact.  (McInteer
21 Depo. 45:6-21.)  Taking the facts in the light most
22 favorable to Plaintiff, his training included several
23 nonexempt activities, including clerical work, manual
24 labor in the yard and on the docks, working with
25

26 [20] Defendants admit that at the outset of his
27 employment, "Plaintiff necessarily had to learn and
   understand the various functions and observe the
   personnel at Ashley's Colton facility."  (Reply at 8.)

machines and equipment, and substantial time spent

observing operations and personnel.[21]  (Id. 28:22-25,

44:2-45:25.)   There is evidence from which a jury could

conclude that these tasks consumed more than half of

the time Ashley employed Plaintiff.[22]  (Id. 42:25-46:24;

---

[21] Defendants argue they "did not expect or instruct
Plaintiff" to perform nonexempt tasks for more than
half of his work time.  (Reply at 8.)  As discussed,
the Court's foremost consideration is the work actually
performed by the employee during the course of the
workweek, not Defendants' expectations.  Insofar as
Defendants argue that the first three months of
Plaintiff's position did not realistically require that
a majority of his time be spent on nonexempt tasks,
Defendants have not presented any evidence on such
requirements.  Defendants provide no evidence on the
training required for the Transportation Care Manager
position or on the direction or instruction Plaintiff
received from his supervisors during his employment.
Defendants thus have not met their burden of
establishing that Plaintiff's three-month position
realistically required him to spend at least half of
his time on exempt tasks.  See Ramirez, 20 Cal.4th at
802 (stating that a trial court should consider
"whether the employee's practice diverges from the
employer's realistic expectations").
     At the hearing on this Motion, Defendants
frequently argued that Plaintiff lacked evidence
regarding Defendants' realistic expectation that
Plaintiff would be performing exempt work more than 50
percent of the time.  The administrative exemption is
an affirmative defense that must be pled and proved by
Defendants; therefore, on summary judgment, Defendants
must present uncontroverted evidence that would entitle
it to prevail.  See UA Local 343 v. Nor-Cal Plumbing,
Inc., 48 F.3d 1465, 1471 (9th Cir. 1994).  Defendants
presented no evidence demonstrating its expectations
were reasonable, and Plaintiff provided evidence of his
actual duties to counter Defendants' stated
expectations.  Thus, Defendants have not met their
burden.
     [22] Plaintiff admits that beginning in about his
second month on the job, he spent approximately 40 to
50 percent of his work hours "filling in the time" and
"looking to stay busy."  (McInteer Depo. 55:13-56:11.)
Defendants argue that "an employee who is supposed to
be engaged in [exempt] activities during most of his
working hours and falls below the 50 percent mark due
(continued . . .)

Opp'n at 16.)   The Court cannot conclude that these tasks were "directly related to management operations or general business operations."   Cal. Code Regs. tit. 8, § 11090(1)(A)(2)(a)(i).   Because there are genuine issues of fact regarding Plaintiff's daily activities and the nonexempt tasks realistically required to complete Plaintiff's first three months on the job, the Court finds the state law claims for wage and hour violations survive summary judgment.

In addition, Wage Order No. 9 expressly provides that "activities constituting exempt work and nonexempt work shall be construed in the same manner as such items are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.201-205, 541.207-208, 541.210, and 541.215."   Cal. Code Regs., tit. 8, § 11090(1)(A)(f).   The effective date of Wage Order No. 9

_____

( . . . continued)
to his own substandard performance should not thereby be able to evade a valid exemption."   Ramirez, 20 Cal.4th at 802.   (Motion at 2, 20.)   The Court agrees that time Plaintiff spent on activities which contravened Ashley's realistic requirements cannot be counted.   However, at best Plaintiff's testimony is unclear as to the activities he completed, if any, while filling time and looking to stay busy.   It is also unclear whether these activities constituted more than half of his time during the course of a workweek. Given the lack of clarity in Plaintiff's testimony, the Court cannot find that Defendants met their burden of demonstrating that Plaintiff was realistically required to be engaged in exempt activities for more than 50 percent of the time, but failed to do so based on his own incompetence.   This is a matter properly decided by the finder of fact.

54

1  was January 1, 2001.  In re UPS, 190 Cal. App. 4th at
2  1015.  As such, the Court may properly consider the
3  federal Department of Labor's implementing regulations
4  as set forth in the Code of Federal Regulations that
5  were in effect as of January 1, 2001.  See id. at 1015,
6  1028.
7      As of January 1, 2001, 29 C.F.R. § 541.210, which
8  is incorporated into the administrative exemption under
9  Wage Order No. 9, stated that the exemption "does not
10  include employees training for employment in an
11  administrative capacity who are not actually performing
12  the duties of an administrative employee."  29 C.F.R. §
13  541.210 (2001), available at
14  http://www.gpo.gov/fdsys/pkg/CFR-2001-title29-
15  vol3/pdf/CFR-2001-title29-vol3-sec541-210.pdf; see also
16  Herrera v. F.H. Paschen/S.N. Nielsen, Inc., No.
17  D051369, 2008 WL 5207359, at *4 n.8 (Cal. Ct. App. Dec.
18  15, 2008).  Viewed in the light most favorable to
19  Plaintiff, the facts could lead a reasonable factfinder
20  to conclude that Plaintiff was primarily engaged in
21  training to become Transportation Care Manager, but he
22  was not actually performing the nonexempt duties
23  incumbent in that position.  Under 29 C.F.R. § 541.210,
24  as incorporated into the state law administrative
25  exemption, there is a triable issue of fact as to
26  whether Plaintiff's training could constitutes non-
27  exempt work.

1    Plaintiff demonstrated a genuine dispute exists as
2  to whether he fell under the administrative exemption
3  during his employment at Ashley.   Accordingly, the
4  Court DENIES Defendants' motion for summary judgment on
5  causes of action numbered four through nine.

6

7  **C.   Waiting Time Penalties**

8

9    In a footnote, Ashley argues that even if Plaintiff
10 was a nonexempt employee, his fifth claim for waiting
11 time penalties under California Labor Code Section 203
12 must fail because he cannot prove that Ashley willfully
13 failed to pay him all wages due.   (Motion at 21 n.9.)
14 A "'good faith dispute' that any wages are due will
15 preclude imposition of waiting time penalties . . . ."
16 Cal. Code Regs. tit. 8, § 13520.
17    In the Court's view, Ashley cannot carry its burden
18 on summary judgment simply by asserting in a conclusory
19 fashion that it acted under a good faith belief that
20 Plaintiff was exempt.   The presence or absence of a
21 good faith belief on Ashley's part is a factual
22 question that must be resolved at trial.   Ashley is not
23 entitled to summary judgment the fifth cause of action.
24 See Takacs v. A.G. Edwards & Sons, Inc., 444 F. Supp.
25 2d 1100, 1125-27 (S.D. Cal. 2006); Lopez v. United
26 Parcel Service, Inc., No. C08-05396, 2010 WL 728205, at
27 * 9 (N.D. Cal. March 1, 2010).

1
2   **D.   Intentional Infliction of Emotional Distress**
3
4        Defendants argue that the Workers' Compensation Act
5   ("WCA"), Cal. Lab. Code § 3602, preempts Plaintiff's
6   eleventh cause of action for intentional infliction of
7   emotional distress ("IIED").  (Motion at 23-24.)  The
8   IIED claim is entirely premised on Defendants' actions
9   leading up to and including Plaintiff's termination.
10  (Compl. ¶¶ 114-119.)
11       The California Supreme Court has clarified that
12  where the alleged unlawful conduct occurs at the
13  worksite in the normal course of an employer-employee
14  relationship, worker's compensation is the exclusive
15  remedy for any injury that results.  Miklosy v. Regents
16  of the Univ. of Cal., 44 Cal.4th 876, 902-03 (2008).
17  While a wrongful termination claim is not preempted by
18  the worker's compensation exclusive remedy rule, an
19  intentional infliction of emotional distress claim
20  premised on termination is preempted.  See Smith v.
21  Lowe's Hiw, Inc., No. 2:13-CV-1713 WBS AC, 2014 WL
22  1419655, at *5-6 (E.D. Cal. Apr. 14, 2014).
23       The Court therefore GRANTS summary judgment on
24  Plaintiff's eleventh claim.
25
26
27
28

**E.   Punitive Damages**

Under California law, punitive damages may be appropriate "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294. Punitive damages are recoverable for FEHA violations. Yeager v. Corr. Corp. of Am., 944 F. Supp. 2d 913, 931 (E.D. Cal. 2013); Commodore Home Systems, Inc. v. Superior Court, 32 Cal.3d 211, 220, 221 (1982). Under FEHA, "[b]ecause Defendant is a corporation, the evidence must demonstrate an officer, director or managing agent of Defendant committed, authorized or ratified an act of malice, oppression or fraud to create a genuine issue of material fact on punitive damages." Yeager, 944 F. Supp. 2d at 931.

A review of the record indicates that a reasonable trier of fact could conclude that managing agents of Ashley, namely Leighty and Qualman, were involved in the decision to terminate Plaintiff. Plaintiff has also presented evidence that her supervisors acted with deliberate indifference by unilaterally terminating him without explanation or advanced notice and ignoring his medical condition.

Because Plaintiff's FEHA claim for disability discrimination survives summary judgment, the Court finds it would be premature to dismiss his request for

punitive damages.  Accordingly, the Court DENIES
summary judgment on Plaintiff's prayer for punitive
damages.

## IV.  CONCLUSION

     For the foregoing reasons, the Court GRANTS IN PART
and DENIES IN PART Defendants' motion for summary
judgment.  The Court DISMISSES WITH PREJUDICE
Plaintiff's first cause of action for age
discrimination and eleventh cause of action for
intentional infliction of emotional distress.  Pursuant
to Plaintiff's request, the Court also DISMISSES WITH
PREJUDICE Plaintiff's third and tenth causes of action
for violation of Cal. Lab. Code § 132(a) and for
defamation.  The Court DENIES summary judgment on
claims two and four through nine.

Dated: August 19, 2014        _____

                                   Jesus G. Bernal
                              United States District Judge